## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 09 2017, 9:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ernest P. Galos
Public Defender
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cecil Alexander Hall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 9, 2017

Court of Appeals Case No.
71A03-1610-CR-2281

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1512-F6-958

**Crone, Judge.**

## Case Summary

[1] Cecil Alexander Hall appeals his conviction, following a bench trial, for level 6 felony domestic battery and level 6 felony criminal confinement. He asserts that the State presented insufficient evidence to support his convictions. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

[2] Hall and R.R. have two children together. Hall did not live with R.R. or his children, but occasionally went to R.R.'s residence to visit or babysit. R.R. lived in an apartment complex in Mishawaka. On the morning of December 7, 2015, Hall was at R.R.'s residence babysitting his children and R.R.'s two-year-old son. R.R. had left work early to take her mother to work. R.R. returned to the residence and informed Hall that she was leaving again. Hall protested and said "no" because he was going to leave instead. To prevent R.R. from leaving, Hall took her purse and phone. Nevertheless, R.R. left and took their children to school. When R.R. returned this time, Hall was waiting in the yard. An argument ensued outside the residence and later continued inside. R.R. went upstairs to her bedroom, and Hall followed. R.R.'s son remained downstairs sitting on the living room couch.

[3] Hall asked R.R. when he would be able to see his children again. She replied that he would need to go through the court system to determine the next visitation. At this response, Hall became angry. Hall pushed R.R. onto the bed, got on top of her, and berated her, saying that "she was no better than all

of the other bitches." State's Ex. 3. He then punched her in the eye and finally dragged her off the bed by her clothes. State's Ex. 2, 3.

[4] R.R. ran downstairs and tried to leave through the front door. Hall closed the front door and placed his foot in front of it. State's Ex. 3. Subsequently, R.R. ran toward the back door and threw an aquarium stand at Hall. Hall managed to block the back door by standing in front of it. *Id.* R.R. returned to the kitchen and struck Hall with a baking sheet. Hall told R.R. that she could not leave with her son and that she needed to sit and calm down, so as not to alarm the neighbors. R.R. pleaded with Hall to hand over her son so she could leave. Her son stood on the couch, and Hall commanded him to sit back down because he was not going anywhere. R.R. threw a chair at Hall, which caused him to lose his balance. R.R. was then able to leave the residence without her son. She went directly to the apartment complex office to seek help.

[5] An apartment complex employee called 911 at R.R.'s behest. R.R. spoke with the 911 operator, declaring, "I finally just broke out of the house and then I just walked here to call. But he punched me in my eye and everything." State's Ex. 2. Officers of the Mishawaka Police Department arrived at the scene and interviewed her. Officer Michael Robinson observed that R.R. "was very distraught and upset." Tr. 08-04-16 at 8. Additionally, Officer Robinson noticed that "[R.R.] had a swollen eye and she had a scratch on her arm." *Id.* at 13. Officer Robert Ashburn took several pictures of R.R.'s injuries and observed that "she was crying and visibly shaken." *Id.* at 17.

[6] On December 11, Detective Jason Koski of the St. Joseph County Police Department interviewed R.R. He noticed during the interview that "her right eye was blackened underneath her eye and the whites of her eye [were] red." *Id.* at 23. On December 14, Detective Koski interviewed Hall. During the interview, Hall admitted to being at the residence on the day of the altercation, pushing R.R. onto the bed, getting on top of her, accidentally poking her in the eye, dragging her off the bed by her clothes, and preventing her from leaving, and he also indicated that R.R.'s son was on the couch. *Id.* at 27-28. Consequently, Hall was arrested and charged with level 6 felony domestic battery and level 6 felony criminal confinement.

[7] A bench trial was held in August 2016. R.R. did not testify. The three police officers mentioned above offered testimony. The trial court found Hall guilty as charged and sentenced him to two years for each count to run concurrently. Hall now appeals.

## Discussion and Decision

### Section 1 – The State presented sufficient evidence to support Hall's domestic battery conviction.

[8] On appeal, Hall contends that the State failed to present sufficient evidence to support his domestic battery conviction. The standard of review for sufficiency of the evidence is well settled. We neither reweigh the evidence nor assess the credibility of witnesses. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). Rather, we look to the evidence and reasonable inferences drawn therefrom that support

the conviction. *Id.* We will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* In sum, the reviewing court will not disturb the conviction when the testimony believed by the trier of fact is sufficient to support it. *Id.* at 500.

[9] To convict Hall of level 6 felony domestic battery, the State was required to prove that he had a child in common with R.R., knowingly or intentionally touched her in a rude, insolent, or angry manner that resulted in bodily injury, and committed this offense in the physical presence of a child less than sixteen years of age, knowing that the child was present and might be able to see or hear the offense. Ind. Code § 35-42-2-1.3(a), -(b)(2) (2015). Hall contends that there is insufficient evidence that he committed domestic battery because R.R. failed to testify, specifically about any bodily injury, and the State failed to prove that he committed the offense in the "physical presence" of a child. Appellant's Br. at 10-11.

[10] "Bodily injury" is defined as "any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29. This Court has held "all that is required to establish bodily injury is that the victim experience *any* physical pain as a result of the defendant's actions." *Toney v. State*, 961 N.E.2d 57, 60 (Ind. Ct. App. 2012) (emphasis added). There is no statutory requirement that the

pain be of any particular severity, nor that it endure for any particular duration. *Id.* at 59. It must simply be physical pain. *Id.*

[11] R.R. told the 911 operator that Hall "punched" her in the eye. State's Ex. 2. Hall concedes that he pushed R.R. onto the bed, got on top of her, poked her in the eye, and dragged her off the bed by her clothes. State's Ex. 3. The photos of R.R. taken after the incident show a swollen eye, redness from broken blood vessels, and a healing scratch on her right forearm. State's Exs. 4-9. The police officers testified that they observed the same injuries and that R.R. was "very distraught and upset" as well as "crying and visibly shaken." Tr. 08-04-16 at 8, 17. Based on these facts, the trier of fact could reasonably infer that R.R. suffered at least a modicum of physical pain. Therefore, the State presented sufficient evidence that R.R. suffered bodily injury at the hands of Hall.

[12] As for whether he committed domestic battery in the "physical presence" of a child, Hall argues that the child's location downstairs on the living room couch was too remote for the child to see or hear the offense because the major portion of the altercation took place in an upstairs bedroom. However, "the critical question in determining whether a child is 'present' for purposes of the statute is *whether a reasonable person would conclude that the child might see or hear the offense*; not whether the child is in the same room as where the offense is taking place." *Manuel v. State*, 971 N.E.2d 1262, 1270 (Ind. Ct. App. 2012) (emphasis added).

Here, a reasonable person could conclude that R.R.'s son might have heard R.R. being dragged to the floor by her clothes and might have heard words or sounds related to Hall touching R.R. The record shows that R.R.'s son stood on the couch when R.R. was pleading with Hall to give her the boy so she could leave. This detail is indicative of a two-year-old boy who is responsive to the sights and sounds of his surroundings. While it is not necessary that the child "actually sense the battery," *Boyd v. State*, 889 N.E.2d 321, 325 (Ind. Ct. App. 2008), *trans. denied*, the record supports the conclusion that the child had the possibility to see or hear it. Therefore, we affirm Hall's level 6 felony domestic battery conviction.

## Section 2 – The State presented sufficient evidence to support Hall's criminal confinement conviction.

Hall next asserts that the State failed to present sufficient evidence to support his criminal confinement conviction. To convict Hall of level 6 felony criminal confinement, the State was required to prove that he knowingly or intentionally confined R.R. without her consent. Ind. Code § 35-42-3-3(a). The term "'confine' means to substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1.

Hall argues that he did not substantially interfere with R.R.'s liberty because he only briefly impeded her departure twice in order to allow her to calm down. Hall cites no authority for the proposition that a person may substantially interfere with another person's liberty to allow that person to calm down. The evidence most favorable to the conviction demonstrates that Hall closed the

front door and placed his foot in front of it, blocked R.R.'s departure from the back door by standing in front of it, and told R.R. that she was not free to leave with her son until she calmed down. State's Ex. 3. It is also reasonable to infer that R.R's purpose in throwing several objects at Hall was to escape her physical confinement. Significantly, it was not until R.R. threw a chair and Hall lost his balance that she was able to leave the residence. And R.R. told the 911 operator, "I finally just broke out of the house." State's Ex. 2. All of this could readily lead a reasonable factfinder to conclude that Hall substantially interfered with R.R.'s liberty. The State presented sufficient evidence to support Hall's conviction for level 6 felony criminal confinement. Therefore, we affirm it.

Affirmed.

Baker, J., and Barnes, J., concur.